IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEAMFITTERS UNION, LOCAL 420<br>  WELFARE FUND,<br>STEAMFITTERS UNION, LOCAL 420<br>  PENSION FUND,<br>STEAMFITTERS UNION, LOCAL 420<br>  SUPPLEMENTAL RETIREMENT PLAN,<br>STEAMFITTERS UNION, LOCAL 420<br>  APPRENTICESHIP TRAINING FUND,<br>SCHOLARSHIP FUND OF STEAMFITTERS<br>  LOCAL UNION NO. 420, and<br>STEAMFITTERS UNION, LOCAL 420<br>  INDUSTRY ADVANCEMENT FUND<br>14420 Townsend Road<br>Philadelphia, PA 19154,<br><br>  and<br><br>LOCAL UNION NO. 420 OF THE UNITED<br>  ASSOCIATION OF JOURNEYMEN<br>  AND APPRENTICES OF THE<br>  PLUMBING AND PIPEFITTING<br>  INDUSTRY OF THE UNITED STATES<br>  AND CANADA<br>14420 Townsend Road<br>Philadelphia, PA 19154,<br><br>          Plaintiffs,<br>  v.<br><br>FLANAGAN MECHANICAL SERVICES, LLC<br>1307 Albright Drive<br>Yardley, PA 19067,<br><br>  and<br><br>JOHN FLANAGAN<br>c/o Flanagan Mechanical Services, LLC<br>1307 Albright Drive<br>Yardley, PA 19067,<br><br>          Defendants. | CIVIL ACTION<br>NO. |

# COMPLAINT

## INTRODUCTION

1.  This is an action to collect delinquent employee benefit fund contributions, union dues, and other authorized employee deductions from Defendant Flanagan Mechanical Services, LLC (hereinafter the "Company" or "Employer") and John Flanagan (hereinafter "Flanagan") due pursuant to the Employee Retirement Income Security Act of 1974, as amended (hereinafter "ERISA"), 29 U.S.C. § 1001 et seq., and the Labor Management Relations Act of 1947, as amended (hereinafter "LMRA"), 29 U.S.C. § 185.

## JURISDICTION AND VENUE

2.  The jurisdiction of this Court is invoked pursuant to §502(a)(3)(B), (d)(1) and (f) and §4301(a)(1), (b) and (c) of the Employee Retirement Income Security Act (hereinafter "ERISA"), 29 U.S.C. §§1132 (a)(3)(B), (d)(1) and (f) and §1451(a)(1), (b) and (c), respectively, and §301(a) of the Labor Management Relations Act, 29 U.S.C. §185(a).

3.  This Court is one of proper venue under ERISA §§502(e)(2) and 4301(d), 29 U.S.C. §§1132(e)(2) and 1451(d), because all of the Plaintiffs and the Defendants have offices in Pennsylvania.

## PARTIES

4.  At all times relevant hereto, Plaintiffs Steamfitters Local Union 420 Welfare Fund (hereinafter "Welfare Fund"), Steamfitters Local Union 420 Pension Fund (hereinafter "Pension Fund"), Steamfitters Local Union 420 Supplemental Retirement Plan (hereinafter "SRP"),

Steamfitters Local Union 420 Apprenticeship Training Fund (hereinafter "Apprenticeship Fund"), and the Scholarship Fund of Steamfitters Local Union No. 420 (hereinafter "Scholarship Fund") (collectively the "ERISA Funds") are trust funds established under 29 U.S.C. § 186(c)(5) and "multiemployer plans" and "employee benefit plans" within the meaning of 29 U.S.C. § 1002(37), (1), (2) and (3).

5. Plaintiff Steamfitters Union, Local 420 Industry Advancement Fund (hereinafter "Industry Fund") is a fund created for the purpose of fostering and advocating the interests of the construction and service industry in the air conditioning and refrigeration fields.

6. Plaintiff Local Union No. 420 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of The United States and Canada (hereinafter the "Union") is an unincorporated association commonly referred to as a labor union, and is the exclusive representative for the purposes of collective bargaining of certain employees of Defendant Flanagan Mechanical Services, LLC (hereinafter the "Company" or "Employer") who are and/or were employed in an industry affecting interstate commerce within the meaning of 29 U.S.C. §§152(5), (6) and (7), 185(a) and 1002 (4), (11), and (12).

7. The ERISA Funds, the Industry Fund, and the Union maintain their principal place of business and are administered from offices listed in the caption which are located in the Eastern District of Pennsylvania.

8. Defendant Company is an employer in an industry affecting commerce within the meaning of 29 U.S.C. §§152(2), (6) and (7), 1002(5), (11) and (12) which maintains the business address listed in the caption.

9. Defendant Flanagan is the principal and owner of the Defendant Company.

10. On July 26, 2004, the Defendant Flanagan signed a Consent and Approval Statement on behalf of the Defendant Company in which it agreed to be bound by the collective bargaining agreement between the Union and the Mechanical Contractors Association of Eastern Pennsylvania, Inc. A true and correct copy of the Consent and Approval Statement is attached hereto as Exhibit A.

11. In addition, Defendant Flanagan signed a Participation Agreement for Bargaining Unit Alumni ("Alumni Agreement"), which obligated the Defendant Company to submit fringe benefit contributions to the Plaintiffs Welfare Fund, Pension Fund, and SRP on behalf of Flanagan as if he were covered by the applicable collective bargaining agreement. A true and correct copy of the Alumni Agreement is attached hereto as Exhibit B.

12. Pursuant to the Consent and Approval Statement the Defendant Company was bound by a serious of collective bargaining agreements, including the collective bargaining agreement in effect between May 1, 2011, and April 30, 2014, ("2011-2014 CBA") and the collective bargaining agreement in effect between May 1, 2014, and April 30, 2017, ("2014-2017 CBA"). A true and correct copy of the 2011-2014 CBA is attached hereto as Exhibit C and a true and correct copy of the 2014-2017 CBA is attached hereto as Exhibit D.

13. Pursuant to those collective bargaining agreements and the Alumni Agreement, the Defendant Company was required:

    (a)    to make full and timely payments to the ERISA Funds, Industry Fund, and the Union;

    (b)    to file monthly remittance reports with the ERISA Funds, Industry Fund, and the Union listing all employees for whom contributions were due under the collective bargaining agreement and Alumni Agreement, and the total number of hours each such employee worked during that month;

(c) to produce, upon request by the ERISA Funds, Industry Fund, and/or the Union, individually or jointly, all books and records deemed necessary to conduct an audit of the Company's record concerning its obligations to the Funds, the Association, and/or the Union;

(d) to pay interest, liquidated damages, and all costs of litigation, including attorneys' fees expended by the ERISA Funds, Industry Fund, and the Union to collect any amounts due as a consequence of the Company's failure to comply with its contractual obligations as described in subparagraphs (a), (b), or (c); and

(e) to be bound by the Trust Documents that govern the ERISA Funds and Industry Fund, and the policies promulgated by the Trustees of those Funds pursuant to those Trust documents.

## COUNT I
### Plaintiffs v. Flanagan Mechanical Services, LLC

14. The above paragraphs are incorporated herein by reference as though duly set forth at length.

15. The Plaintiffs conducted a payroll audit of the Employer contributions due between January 1, 2013 and July 31, 2015 ("Audit Report").[1] The audit identified a total of $32,619.40 was due for the audit period, $20,593.57 principal delinquency, $4,118.71 in liquidated damages, and $7,907.12 in interest, with interest calculated through November 30, 2016. A true and correct copy of the Audit Report with June 1, 2017 cover letter is attached hereto as Exhibit E.

---

[1] Plaintiffs previously filed a lawsuit against the Flanagan Mechanical Services, LLC to compel its cooperation with the audit. See *Steamfitters Union Local 420 Welfare Fund et. al. v. Flanagan Mechanical Services, LLC*, Case No. 2:16-cv-1380. That lawsuit was withdrawn when the Company agreed to produce the records necessary for the payroll audit.

16. The Plaintiffs have promulgated a Policy for Collective of Delinquent Contributions, Payroll Audits, Refund of Mistaken Contributions, Bonding and Contributions by Owners ("Delinquency Policy") which sets forth the procedures for payroll audits, and explains how the interest and liquidated damages due on delinquent contributions are calculated. The Delinquency Policy is adopted by reference in Article IX, Section 8 of the 2011-2014 CBA and Article IX, Section 8 of the 2014-2017 CBA. See Exhibit C at p. 23, Exhibit D at p. 22. A true and correct copy of the Delinquency Policy is attached hereto as Exhibit F.

17. Section 4, paragraph 7 of the Delinquency Policy states that a contributing employer may be charged the cost of a payroll audit if the Board of Trustees that govern the Plaintiffs "in their sole discretion, finds that there is a pattern of substantial underpayment or failure to comply with the Contribution obligation by an employer[.]" Exhibit F, p. 6.

18. In light of the substantial principal amounts revealed to be due by the Audit Report, the Trustees concluded that the Company demonstrated a pattern of substantial underpayment and determined and thus the Company should be charged for the cost of conducting the audit.

19. On June 1, 2017, the Plaintiffs, through the benefit plans administrator Robert Winther, sent a copy of the audit report to the Employer, to the attention of Defendant Flanagan, demanding payment for the principal, interest, and liquidated damages, as well as $4,805.00 in audit fees. Exhibit E, p. 1.

20. Neither Flanagan nor any other representative of the Company responded to the June 1, 2017 letter.

21. On or about June 11, 2017, Plaintiffs re-sent their June 1, 2017 letter and Audit Report, adding the following notation to the cover letter: "SECOND REQUEST. Please respond

6

by 6/23/17 to avoid legal action." A true and correct copy of that "second request" letter is attached hereto as Exhibit G.

22. Neither Flanagan nor any other representative of the Company responded to that "second request" letter.

23. On July 12, 2017, Plaintiffs, through their counsel, sent a copy of the audit report along with a letter demanding payment for payment to the Company's attorney. A true and correct copy of the July 12, 2017 letter is attached hereto as Exhibit H.

24. The Company's attorney promptly responded and he advised Plaintiffs' attorney of Defendants' various objections to the Audit Report.

25. The Plaintiffs reviewed those objections with the auditor and concluded they were without merit.

26. On August 8, 2017, Plaintiffs, through their counsel, sent a "final" demand for payment of the amounts revealed by the audit, including interest, liquidated damages, and audit fees, to the Company's attorney, and demanded payment within fourteen days. A true and correct copy of the August 8, 2017 letter is attached hereto as Exhibit I.

27. Defendants failed and refused to respond to the August 8, 2017 letter.

28. The Employer's refusal to pay breaches the terms of the collective bargaining agreements and constitutes a delinquency under ERISA, 29 U.S.C. § 1145.

29. In addition to the delinquent principal, Employer owes interest, liquidated damages, attorneys' fees and costs, and audit fees pursuant to 29 U.S.C. §1132(g)(2), Article IX, Section 8 of the 2011-2014 CBA (Exhibit C, p. 23), Article IX, Section 8 of the 2014-2017 CBA (Exhibit D, p. 22), and the Delinquency Policy.

WHEREFORE, Plaintiffs ask that the Court:

(1) Enter judgment in favor of the Plaintiffs and against the Employer in the amount of $20,593.57 for unpaid principal contributions, pursuant to the collective bargaining agreements and 29 U.S.C. §1132(g)(2)(A);

(2) Enter judgment in favor of the Plaintiffs and against the Employer for interest which will include $7,907.12, plus such other interest that has accrued and will subsequently accrue since November 30, 2016, pursuant to the collective bargaining agreements, the Delinquency Policy and 29 U.S.C. §1132(g)(2)(B);

(3) Enter judgment in favor of the Plaintiffs and against the Employer for $4,118.71 in liquidated damages pursuant to the collective bargaining agreements, the Delinquency Policy, and 29 U.S.C. §1132(g)(2)(C)(ii);

(4) Enter judgment in favor of the Plaintiffs and against the Employer for attorneys' fees and costs, pursuant to the collective bargaining agreements and 29 U.S.C. §1132(g)(2)(D);

(5) Enter judgment in favor of Plaintiffs and against the Employer for $4,805.00 in audit fees pursuant to the collective bargaining agreements, the Delinquency Policy, and 29 U.S.C. §1132(g)(2)(E); and

(6) Grant any other further relief the court finds just and proper.

## COUNT TWO
## DELINQUENT CONTRIBUTIONS
### ERISA Funds v. Flanagan

30. The above paragraphs are incorporated herein by reference as though duly set forth at length.

31. Article IV, Section 1(g) of the Pension Fund's Trust Agreement, as amended on January 17, 2008, Article IV, Section 1(g) of the Welfare Fund's Trust Agreement, as amended on January 17, 2008, Article IV, Section 1(g) of the SRP's Trust Agreement, as amended on January 17, 2008, Article IV, Section 1(f) of the Apprenticeship Fund's Trust Agreement, as amended on March 3, 2008, and Article X, Section F of the Scholarship Fund's Trust Agreement, as amended on March 3, 2008, (collectively, the "Trust Agreements") defines Fund assets as follows:

> Fund Assets means: (1) such sums of money that have been or will be paid, or which are due and owing to the Fund by covered Employers as required by Collective Bargaining Agreements of Participation Agreements...

True and correct copies of the above quoted pages from the Trust Agreements are attached hereto as Exhibit J.

32. The Employer is a "covered Employer" within the meaning of the Trust Agreements as it is a signatory to collective bargaining agreements which require it to contribute to the various ERISA Funds.

33. As the owner of the Employer, Flanagan was ultimately responsible for preparing, reviewing, authorizing payment and submitting monthly reports and contributions to the ERISA Funds. In that capacity, Defendant Flanagan exercised control over the disposition of monies that became plan assets immediately upon the monthly contribution due date.

34. Flanagan, individually and collectively, maintained both formal and practical authority to direct that proper contributions be paid to the ERISA Funds at all times relevant hereto.

35. Flanagan, individually and collectively, exercised authority and control over the management and disposition of the ERISA Funds' assets.

36. As a result of exercising control and management over the ERISA Funds' assets, Flanagan is a fiduciary under ERISA.

37. Under ERISA, a fiduciary is required to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries... for the exclusive purpose of... providing benefits to [them]." 29 U.S.C. §1104(a)(1).

38. A fiduciary who uses plan assets to satisfy other personal or business obligations breaches his/her fiduciary duty under ERISA.

39. Because Flanagan willfully and intentionally used the ERISA Funds' plan assets contained within their personal accounts and the accounts of the Employer for purposes other than the exclusive purpose of providing benefits to the ERISA Funds' participants and beneficiaries, Defendant Flanagan breached his fiduciary duty to the ERISA Funds.

40. Under ERISA, "any person who is a fiduciary with respect to the plan who breaches any one of the responsibilities, obligations, or duties imposed upon fiduciaries" is personally liable "to make good to such plan any losses to the plan resulting from each such breach, and to restore the plan any profits of such fiduciary which have been made through the use of assets by the plan fiduciary[.]" 29 U.S.C. §1109(a).

41. Of the principal delinquency claimed in Count One, $18,545.42 is due to the ERISA Funds.

42. Flanagan is jointly and severally liable with the Employer for the $18,545.42 in principal contributions due to the ERISA Funds, as well as interest, liquidated damages, attorneys' fees and costs, and audit fees thereupon.

WHEREFORE, Plaintiffs ask that the Court:

(1) Declare that Flanagan is a fiduciary of the ERISA Funds by virtue of his exercise of control of plan assets and that Flanagan be found in breach of his fiduciary duties;

(2) Enter judgment in favor of the ERISA Funds and against Flanagan, jointly and severally with Employer, for $18,545.42 of the principal amounts awarded in Count One, plus interest, liquidated damages, attorneys' fees and costs, and audit fees attributable thereto.

                                        CLEARY, JOSEM & TRIGIANI, LLP

                                BY: _____
                                      WILLIAM T. JOSEM, ESQUIRE
                                      JEREMY E. MEYER, ESQUIRE
                                      Constitution Place
                                      325 Chestnut Street, Suite 200
                                      Philadelphia, PA 19106
Dated: September 6, 2017               (215) 735-9099